IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BLOCK**<br>*Plaintiff*<br><br>**v.**<br><br>**BARNES**<br>*Defendant.* | **CIVIL ACTION**<br><br>**NO. 23-2483** |

**MEMORANDUM RE: DEFENDANT'S MOTION TO TRANSFER**

**Baylson, J.**                                                              **November 25, 2025**

Plaintiff Carson Block ("Block") brings this defamation suit against Defendant Kevin Barnes ("Barnes"), a former business associate. Block alleges that Barnes and his attorney made various defamatory comments to several national media outlets regarding Block's unwillingness to share in the proceeds of a $14 million Securities and Exchange Commission ("SEC") whistleblower award.

Presently before the Court is Defendant Barnes's Motion to Transfer this case to the Southern District of New York, where a related action initiated by Defendant Barnes is pending.

## I.    FACTUAL BACKGROUND

Block is a relatively well-known activist short seller. Compl. ¶¶ 33–34, ECF 1. Block's company, Muddy Waters, LLC, prepares freely available reports that expose fraud, financial inaccuracies, and other forms of corporate malfeasance, primarily focusing on China-based companies listed on North American stock exchanges. Id. ¶¶ 26–28. To finance that research, Muddy Waters Capital LLC, a related entity also owned by Block, shorts the companies on which it reports. Id. ¶¶ 2–3. The company simultaneously announces those short positions when releasing a report. Id. ¶ 3.

This dispute centers on Muddy Waters' investigation into Focus Media—a Chinese digital media and advertising company. Id. ¶ 6. More precisely, it focuses on Barnes's (1) association with Muddy Waters during that investigation, (2) assertion that he is entitled to a portion of the SEC's ensuing $14 million whistleblower award, and (3) comments to the press about the same.

## A. Barnes Becomes Affiliated with Muddy Waters

As alleged in the Complaint,[1] Barnes introduced himself to Block in early 2011. Compl. ¶ 35. At an "informal" meeting, Barnes expressed an interest in short-selling, and Block agreed to consider Barnes for future Muddy Waters projects. Id. ¶ 36.

Later in 2011, Block approached Barnes to assist with Muddy Waters' investigation into a Chinese company called Sino-Forest. Id. ¶ 37. Under Block's proposed consulting agreement, Barnes was to be an independent contractor—subject to a strict confidentiality obligation and capable of earning three forms of compensation. Id. ¶ 38–39. Specifically, the agreement would have permitted Barnes to (1) trade on his own account, (2) receive reimbursements for appropriate expenses, and (3) be eligible for a discretionary bonus. Id. ¶ 39. Thus, according to Block, Barnes would not have been "an employee paid a salary or hourly wage," nor would Barnes have an "interest in Muddy Waters or the proceeds from the project." Id.

Barnes rejected this proposal, instead "insist[ing] on some form of guaranteed compensation." Id. ¶ 40. Block viewed Barnes's demand to be unrealistic and thus declined Barnes's assistance on the Sino-Forest investigation. Id. ¶ 41.

## B. The Focus Media Investigation

The Sino-Forest investigation ultimately proved successful. Compl. ¶ 43. As a result, Barnes re-engaged Block in late 2011 to "ask[] for a second chance." Id. ¶ 44. Block agreed,

---

[1] This Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff. Doe v. Univ. of Sci., 961 F.3d 203, 208 (3d Cir. 2020).

enlisting Barnes to assist with Muddy Waters' investigation into Focus Media, an investigation which Barnes had "no involvement in identifying." Id. ¶ 46–47.

The parties entered into an independent-contractor agreement, which largely mirrored the proposed Sino-Forest arrangement: "Mr. Barnes could trade on his own account, would receive reimbursement of appropriate expenses, and could be eligible for a discretionary bonus." Id. ¶ 48. Block again stressed that Barnes was "not an employee who would be paid a salary or hourly wage, he had no bonus formula or guarantee, and he had no interest in Muddy Waters **or the proceeds from the project**." Id. As Block puts it, nothing in that agreement indicated that Block had "offered []or agreed to make Mr. Barnes a partner in Muddy Waters or the Focus Media project," or "to share with Mr. Barnes the proceeds of any later award that might be recovered as a result of the investigation of Focus Media." Id. ¶ 50.

Block further alleges that although Barnes did assist with Muddy Waters' Focus Media investigation, Barnes ultimately played a "relatively minor" role. Id. ¶ 51. Block alleges that Barnes was just one of just six onsite full-time investigators, whose inability to speak Chinese significantly limited his contributions to the investigation. Id. Specifically, Block alleges that "Mr. Barnes' primary contribution was assisting with an approximately 3-page-long section of the 80-page report." Id. ⁋ 52.

### C. Muddy Waters Releases Reports and Parts Ways with Barnes

Muddy Waters released the first of six reports concerning its Focus Media investigation in November 2011. Compl. ⁋ 52. That initial report—which stated that Focus Media had made material misrepresentations regarding its business and was misleading its investors—had an immediate negative impact on Focus Media's share price. Id. ¶¶ 53–54.

Over the next two years, Muddy Waters authored several follow-up reports, with the final report releasing on January 24, 2013. Id. ¶ 8. Notably, by April 2012—i.e., in the midst of Muddy Waters releasing these reports—Block alleges that "Muddy Waters had chosen no longer to engage Mr. Barnes." Id. ¶ 54.

### D. SEC Investigation and Block's Whistleblower Award

In 2015, Focus Media became the subject of an SEC enforcement action. Compl. ¶ 55. That action targeted the same misconduct exposed by Muddy Waters' reports and swiftly led to a $55.6 million fine against Focus Media. Id. ¶ 9. Shortly thereafter, Block began to prepare an application for an SEC whistleblower award. Id. ¶ 65. Block alleges that while preparation of his application was in process, Barnes—who allegedly knew nothing of this personal application— reached out to Block and offered to "quarterback" a submission on behalf of Muddy Waters. Id. ¶ 62. Block declined, informing Barnes that he had already retained counsel to assist with the application. Id. ¶ 64.

Block alleges that, despite that rejection, and unbeknownst to Block, Barnes simultaneously submitted his own whistleblower application. Id. ¶ 65. According to Block, "Mr. Barnes was encouraging Mr. Block to pursue his whistleblower claim, while having secretly filed with the SEC his own competing claim for the same award – a claim that, if successful, would have reduced or even barred any award to Mr. Block." Id. Moreover, Block alleges that, unlike the "tip form" he had submitted to the SEC—which set forth all of Focus Media's illicit conduct— "Mr. Barnes did not himself provide the SEC any information (he was simply arguing that he was responsible for the information Mr. Block provided), did not fill out or submit the tip form, and did not have any high-quality original information to contribute." Id. ¶ 66.

Eventually, in 2022, the SEC awarded Block a $14 million whistleblower award for his efforts. Id. ¶ 68. In announcing the award, the SEC explained that Block had "published an online report exposing an ongoing fraud [and] days later shared the same information with the SEC and was persistent in reaching out to the staff," which had "prompted the opening of an investigation which resulted in a successful enforcement action and the return of millions of dollars to harmed investors." Id. ¶ 59. In that same Order, the SEC denied Barnes's competing application. Id. ¶ 68.

### E. Barnes's Efforts to Obtain a Share of the Award

Barnes appealed the SEC's award to the Third Circuit, which denied his claim in March 2023. Compl. ¶¶ 69–70. According to Block, throughout these proceedings, Barnes and his counsel also repeatedly contacted Block and Muddy Waters to demand money from them, which Block repeatedly declined to do. Id. ¶ 72.

As a result, Barnes filed a Summons with Notice against Block and Muddy Waters in the Supreme Court of the State of New York on July 25, 2022 ("New York action"). Id. ¶ 74. That Summons with Notice describes Barnes's New York action as one for "breach of partnership, unjust enrichment, and constructive trust." Id. Block alleges that Barnes did not actually serve the Summons on Muddy Waters until July 29 and on Block until August 13, 2022, respectively; and Barnes did not actually file or serve his Complaint in the New York action until September 26, 2022. Id. ¶¶ 76, 93.

In the interim, and central to this case, Barnes began what Block alleges was a "campaign to defame." Id. ¶ 77. First, on July 28, 2022, the Wall Street Journal ran a story with the headline "Short Seller Carson Block Sued Over $14 Million Whistleblower Award," in which Barnes had stated that:

> [H]e worked with Mr. Block on a report on Focus Media Holding Ltd. that formed
> the basis of a SEC action, and that the two had agreed to share proceeds from legal
> or regulatory actions stemming from their research on the China-based advertising
> company. . . Mr. Barnes said in an interview with the Journal that the claimant who
> received the award was Mr. Block, who has been represented by whistleblower
> attorney Jordan Thomas in the award process.

Id. ¶ 79.  Then, on July 29, 2022, Barnes's lawyer said the following in a <u>Bloomberg</u> article entitled

"Mystery of Carson Block SEC Payout Deepens With Suit Outing Him:"

> There is no explanation for why the SEC recognized Mr. Barnes as an author of the
> report, and noted his claim, but did not compensate him with part of the award, . . .
> . . Even more than that, though, Carson Block used Mr. Barnes and his work to
> obtain this windfall. That isn't fair either.

Id. ¶ 81.  These allegations are the focal point of Block's defamation claim.

## II.    **PROCEDURAL HISTORY**

This dispute has a complicated procedural history.  Because the sequencing of that history

directly affects this Court's resolution of the present motion, we review it in some detail.  As noted,

Barnes filed his Summons with Notice in the New York action on July 25, 2022.  Compl. ¶ 74.

On July 29 and August 13, 2022, Barnes then served that Summons with Notice on Muddy Waters

and Block, respectively.  Id. ¶ 76.  But, as noted, Barnes did not actually serve a complaint at that

time.

On August 24, 2022, Block and Muddy Waters removed Barnes's New York action to the

Southern District of New York, where it is still pending before Chief Judge Swain.  Id. ¶ 92.

On August 25, 2022, Block then filed a separate defamation suit in the Western District of

Texas.  Id. ¶ 87.  As Block alleged in that action and continues to allege here, Texas was the proper

place to bring the defamation suit because "that is where [he resides]" and "defamation . . . occurs

where [Block] lives."  Id. ¶ 89.  Block further contends that "New York was not an appropriate

location for the defamation action because, among other things, (a) none of Muddy Waters'

investigation of Focus Media occurred in New York; (b) none of the key witnesses [are] located

6

in New York (e.g., neither Mr. Block nor Mr. Barnes reside there); and (c) Muddy Waters has its offices in Texas, not New York." Id. ¶ 90.

On September 28, 2022, Barnes then served his Complaint on Block and Muddy Waters in the New York action. Id. ¶ 93.[2]

On October 18, 2022, Block moved to dismiss Barnes's Complaint in the New York action. Barnes v. Block et al., 22-cv-07236 (S.D.N.Y.), ECF 15. As relevant here, Block contended:

(1) the Southern District of New York lacked personal jurisdiction over Block,
(2) Barnes's claims should nonetheless be dismissed on forum non conveniens grounds, and
(3) Barnes's unjust enrichment, constructive trust, and fiduciary duty claims were compulsory counterclaims in the pending Texas Action. Id. at 2–3.

On March 30, 2023, Magistrate Judge Howell issued a Report and Recommendation in the Western District of Texas action recommending dismissal of Block's defamation Complaint on personal jurisdiction and venue grounds. Block v. Barnes, 2023 WL 2732552, at *6 (W.D. Tex. Mar. 30, 2023).

On June 28, 2023, Block filed his defamation Complaint in this action in this Court. Compl., ECF 1.

On July 18, 2023, Judge Ezra of the Western District of Texas adopted Magistrate Judge Howell's Report and Recommendation, dismissing the case for lack of personal jurisdiction. Block v. Barnes, 2023 WL 4582396, at *3 (W.D. Tex. July 18, 2023).

On September 18, 2023, Barnes filed the present Motion to Dismiss, or in the alternative, to Transfer. ECF 8. Block responded on October 18, 2023. ECF 12. Barnes replied on October

---

[2] The parties' filings allege September 26, 2022, as the date that Barnes filed his Complaint in the Southern District of New York. That filing was deemed "insufficient," and Barnes re-filed his Complaint on September 28, 2022. Barnes v. Block et al., 22-cv-07236 (S.D.N.Y.), ECF 11, 13. The Court will use the September 28, 2022, date to determine the first-filed suit.

25, 2023. ECF 13. Block moved to file a sur-reply on November 3, 2023, ECF 14, which the Court granted on November 6, 2023, ECF 15, and the sur-reply was filed that same day, ECF 16.

On April 12, 2024, this Court, determining that many of Barnes's arguments regarding choice of law, compulsory counterclaims, and transfer may turn on the outcome of Block's motion to dismiss Barnes's breach of fiduciary duty, unjust enrichment, and constructive trust claims, stayed this action pending the Southern District of New York's ruling. ECF 17.

On June 23, 2025, the Southern District of New York ruled that it had personal jurisdiction over Block. Barnes v. Block, 2025 WL 1736519 (S.D.N.Y. June 23, 2025). Thereafter, this Court ordered the parties to submit Status Reports identifying any changes in their positions in light of the Southern District's ruling and indicating whether supplemental briefing was necessary. ECF 19. On August 7, 2025, in separate Status Reports, Block and Barnes reported that their positions remained unchanged, and that supplemental briefing was not required. ECF 20, 21. Barnes further stated, "that this Court should prioritize the resolution of the motion for transfer, rather than treating it as an alternative to the primary relief requested by Barnes' motion – the dismissal of this action." ECF 21 at 1–2. On August 13, 2025, this Court lifted the Stay and stated that it would decide Barnes's Transfer Motion. ECF 22. This Court held a hearing on Defendant's Motion to Transfer on September 29, 2025. ECF 23. Following the hearing, this Court permitted the parties to submit additional written argument on the Motion to Transfer. ECF 26. Both parties submitted additional written argument. ECF 30, 31.

### III.   PARTIES' CONTENTIONS

#### A. Barnes's Motion

Barnes contends that it would "be more convenient to all parties and all witnesses to transfer this case to the Southern District of New York." Mot. at 22, ECF 8. In so arguing, Barnes

notes that when two related federal lawsuits are pending in different courts, the later-filed case can be transferred to the forum of the earlier-filed case when there is substantial overlap in subject matter. Id. (citing D&L Distrib., LLC v. Agxplore Intern. LLC, 959 F.Supp.2d 757, 772 (E.D. Pa. 2013) (Gardner)). Barnes posits that his New York Action was first-filed, as compared to both Block's Complaint here and his earlier Complaint in the Texas action. Id. at 23.

Specifically, Barnes contends that we must look to the Summons with Notice—not the docketing date of his subsequent Complaint—to determine when a case was first filed. Id. Barnes further asserts that, even if the date he filed his New York action Complaint serves as the relevant demarcation, September 28, 2022 still predates Block's filing of a Complaint in this action by over nine months. Id. And while Barnes maintains that the New York Action predates even the Texas action because, in his view, the filing of the Summons is the relevant demarcation, he further argues that "the complaint here is distinct from the complaint in the Texas Litigation because, for about a month, both were pending at the same time," id., and so the Court should disregard the Texas action in a first-to-file analysis.

### B. Block's Response

Block counters on two fronts. First, he argues that traditional "private interest" considerations for transfer under 28 U.S.C. § 1404(a)—namely, preference, convenience, and logistics—all counsel against transfer. Resp. at 26, ECF 12. Specifically, Block argues that because Barnes lives near Philadelphia and neither he nor Barnes lives in New York, both the "location of witnesses and documents" and "the convenience of the parties" favors Philadelphia above all other locations. Id. at 27–28 (citing to 28 U.S.C. § 1404(a)). Likewise, Block asserts the national and international distribution of Barnes's statements, even if done by news outlets

based in New York, precludes this Court from concluding that Block's defamation claim "arose" in New York. Id. at 28.

Second, Block asks the Court to reject Barnes's "first-to-file" argument. Id. Here, Block contends "that applicable New York appellate law holds that such a summons is *not* adequate for establishing priority under the first-in-time rule; a complaint must be served," and thus Block's August 2022, Texas Complaint predates Barnes's September 2022, New York Complaint. Id. at 29. Block also notes that while Barnes initially chose to pursue his case in New York state court, "there is now no case in that court," id. and that the first-filed rule should not be "applied mechanically." Id. (citation omitted).

### C. Barnes's Reply

Barnes reiterates two points. First, that the Summons, not Complaint, is the demarcation line. Reply at 13–14. Second, that even if the Complaint is the relevant date, Block's suit in this district does not relate back to the Texas action. Id.

### D. Block's Sur-reply

Block emphasizes that this suit and the Texas action assert the same defamation claim under Texas law, based on the same underlying conduct, and thus for first-filed purposes, the initiation of the Texas action is the relevant date because this action is a continuation of the Texas action. Sur-reply at 8–9.

## IV.    LEGAL STANDARD

Barnes moves for transfer pursuant to the first-filed rule and 28 U.S.C. § 1404(a). The first-filed rule holds that in cases sharing substantially similar subject matter and subject to concurrent federal jurisdiction, the court of the first filing must decide the controversy. E.E.O.C. v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988). The rule enforces a policy of comity

that counsels trial judges to exercise their discretion by enjoining the subsequent prosecution of similar cases in different federal district courts. Id. That authority, however, "is not rigidly applied." Id. at 972. The Third Circuit has identified at least six reasons to depart from the first-filed rule, including rare or extraordinary circumstances, inequity, bad faith, forum shopping, case development, and filing done in anticipation of the opposing party's imminent suit in a less favorable forum. Id. at 972, 976.

Within this Circuit there are at least two approaches to applying the first-filed rule. One approach is to only apply the first-filed rule when the parties and claims in the later-filed suit are a "mirror image" of the first. Palagano v. NVIDIA Corp., 2015 WL 5025469, at *2 (E.D. Pa. Aug. 25, 2015) (Pratter) (listing cases). The second, broader approach applies the first-filed rule to disputes that "substantially overlap[]." Id. According to proponents of the broader approach, the "substantive touchstone of the first-to-file inquiry is subject matter," rather than legal claims or parties. Id. (quoting Shire U.S. Inc. v. Johnson Matthey, Inc., 543 F.Supp.2d 404, 409 (E.D. Pa. 2008) (Rufe)).

Moreover, many district courts in this Circuit have held that even when the first-filed rule applies, the conditions of 28 U.S.C. § 1404 must still be satisfied. Thompson v. Glob. Mktg. Rsch. Servs., Inc., 2016 WL 233702, at *3 (E.D. Pa. Jan. 20, 2016) (Brody) (listing cases).

To satisfy § 28 U.S.C. § 1404's conditions, the moving party must show that transfer is "convenien[t] [for the] parties and witnesses, in the interest of justice," and that the action could have been filed in the district in which the transfer is sought. 28 U.S.C. § 1404(a). The burden is on the defendant, Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995), and transfer "is not to be liberally granted," Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).

In deciding whether to transfer a case pursuant to 28 U.S.C. § 1404, courts consider at least twelve factors. Jumara, 55 F.3d at 879. The first six, which address the private interests in the case, are the (i) plaintiff's forum preference, (ii) defendant's forum preference, (iii) location where the claim arose, (iv) convenience of the parties, (v) convenience of the nonparty witnesses to the extent that the witnesses may be unavailable for trial in one of the fora, and (vi) location of records to the extent that they could not be produced in the alternative forum. Id. The next six, which address the public interests in the case, are the (vii) enforceability of the judgment, (viii) practical considerations that could make the trial easy, expeditious, or inexpensive, (ix) relative administrative difficulty in the two fora resulting from court congestion, (x) local interest in deciding controversies at home, (xi) public policies of the fora, and (xii) familiarity of the trial judge with applicable state law in diversity cases. Id. at 879–80. This list is not exhaustive. Id. at 879. Of these factors, the plaintiff's choice of forum is the primary consideration, "and that choice should not be lightly disturbed." Shutte, 431 F.2d at 25.

## V.   DISCUSSION

The Court will first determine whether the first-filed rule applies, before turning to 28 U.S.C. § 1404's considerations.

### A.  First-Filed

#### 1.  Chronology & Continuation

As a preliminary matter, Barnes's Southern District of New York action is the first-filed. A summary of the timeline follows:

1. July 25, 2022, Barnes filed a Summons with Notice in New York state court;

2. July 29, 2022, Barnes served the Summons with Notice on Muddy Waters;

3. August 13, 2022, Barnes served the Summons with Notice on Block;

4.  August 24, 2022, Block removed Barnes's New York action to the Southern District of New York;

5.  August 25, 2022, Block filed his Complaint in the Western District of Texas;

6.  September 28, 2022, Barnes filed his Complaint in the Southern District of New York;

7.  June 28, 2023, Block filed his Complaint in this district;

8.  July 18, 2023, Judge Ezra of the Western District of Texas dismissed Block's suit for lack of personal jurisdiction.

Block is correct that the weight of the caselaw holds that the date of a complaint's filing is the demarcation line in a fist-filed analysis.[3]  As such, September 28, 2022, is the relevant date regarding Barnes's New York suit.  However, the September 28, 2022, date still predates Block's filing of the Complaint in this action by nine months.  Block wants the Court to find that this case is "a continuation of the Texas Action," Sur-reply at 8, however, Block points to no law to this effect.  After its own extensive review of the caselaw, the Court finds that this case is not a continuation of the Texas action for purposes of the first-filed doctrine.

The Third Circuit has addressed whether a party's second filed suit was a continuation of its first filed suit in Vodenichar v. Halcon Energy Prop., Inc., 733 F.3d 497 (3d Cir. 2013) and Erie Ins. Exch. by Stephenson v. Erie Indem. Co., 68 F.4th 815 (3d Cir. 2023).  In both Vodenichar, and Erie, the Third Circuit answered whether there was federal jurisdiction over a case filed in state court where the plaintiffs voluntarily dismissed a previously filed federal class action

---

[3] Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 96, n.3 (9th Cir. 1982) (noting that the relevant date in a first-filed analysis is the date the complaint was filed, not the date that process was served, because it is the filing of a complaint that commences a federal action); QVC, Inc. v. Patiomats.com, LLC, 2012 WL 3155471, at *3 (E.D. Pa. Aug. 3, 2012) (Schiller) ("The date the original complaint was filed is determinative for purposes of the first-filed rule."); Peregrine Corp. v. Peregrine Indus., Inc., 769 F.Supp. 169, 171 (E.D. Pa. 1991) (Hyuett) ("Although the Third Circuit Court of Appeals has never specifically addressed the significance, if any, of the dates of service of process with respect to determining the priority as between two lawsuits dealing with the same parties and the same issues, in light of the decision in EEOC" it is clear that "the first-filed rule, as its name indicates, is premised upon a priority of filing the complaint—not upon a priority of serving the complaint.").

containing the same allegations.    While <u>Vodenichar</u> and <u>Erie</u> arise under different factual circumstances than this case, their explanations of when a party's second filed suit is a continuation of its first is instructive.

In <u>Vodenichar</u>, the Third Circuit concluded that the second filed suit was a continuation of the first suit solely for purposes of the local controversy exception. 733 F.3d at 509.  Important to that determination was the fact that the district court conditioned dismissal of the first suit on the parties' participation in alternative dispute resolution and the parties' retention of the discovery that they had already exchanged. <u>Id</u>.  The Third Circuit held that "[t]he District Court's actions showed that it considered the second filed action a continuation of the first filed action and took practical steps to ensure that the act of filing the second complaint did not delay the parties' ability to proceed." <u>Id</u>.  No similar judicial involvement occurred here. Block's first defamation suit was filed in a different court and was pending before a different judge than this action.  In <u>Vodenichar</u> and other cases where a second suit was deemed a continuation of the first, both actions were brought in the same court, frequently before the same judge.[4]

In <u>Erie</u>, the Third Circuit held that where "a plaintiff voluntarily dismisses his case, 'any future lawsuit based on the same claim is an entirely new lawsuit unrelated to the earlier (dismissed) action.'" F.4th 68 at 821 (quoting <u>City of South Pasadena v. Mineta</u>, 294 F.3d 1154,

---

[4] <u>See Bargain Software Shop, LLC v. Adobe Systs. Inc.</u>, 2014 WL 12884982, at *3 (W.D. Tex. 2014) (finding that defendant's second suit was a continuation of its first for first-filed purposes where both suits were filed in California and the California judge presiding over the second suit already implied that the second suit was a continuation of the first for first-filed purposes.); <u>Oregon Catholic Press v. Ambrosetti</u>, 2020 WL 12769032, at *3–4 (D. Or. Jul. 6, 2020) (finding that defendant's second Indiana action was a continuation of his first Indiana action where the first action was dismissed without prejudice on the basis of an administrative error, the allegations contained in the complaints were nearly identical, the same judge was assigned to both actions, and defendant's filing came just one week after plaintiff's initial suit, demonstrating "precisely the kind of inefficient, duplicative litigation that the first-filed rule is intended to avoid."); <u>Ickes v. AMC Networks Inc.</u>, 2023 WL 4297577, at *3 (N.D. Cal. June 30, 2023) (finding defendant's second New York suit was a continuation of its first for first-filed purposes where the second suit was filed the same day that the first suit was dismissed, brought the same claims, and was pending before the same judge as the first filed suit, while noting that if defendant's second suit was not pending in the same district as its first suit, it would find defendant's first filed suit irrelevant to the first-filed analysis.)

1157 (9th Cir. 2002)). Notably, other Circuits have applied this holding to court ordered dismissals, in addition to voluntary dismissals.[5][6] Erie explained that its holding did not run counter to Vodenichar because its reasoning in that case "rested entirely on the text and purpose of the local controversy exception." Id. at 822. Erie described Vodenichar's language that the plaintiff's voluntary dismissal and refiling strategy was "similar 'in practical terms' to 'a situation where a party amends a pleading to join parties to an existing case,'" as a "red herring." Id. at 821–22. Erie explained that the sole issue in Vodenichar was whether the dismissed action was an "other class action" as that term is used in the Class Action Fairness Act's local controversy exception, the text of which excludes from its exception cases where a defendant is named in multiple similar cases. Id. at 822. Vodenichar thus reasoned that the "other class action" requirement was linked to Congress's goal of controlling the impact of multiple actions filed by different members of the same class. Id. Noting the unique procedural history of Vodenichar and its similarity to the predecessor suit, the Third Circuit determined that Congress's policy concern was not implicated by finding that the predecessor suit was not "[i]n practical terms," an "other class action" under the exception. Id. Erie concluded that if the Third Circuit "truly considered the Vodenichar plaintiffs' voluntary dismissal and refiling to be 'no different from a situation where a party amends a pleading to join parties to an existing case' we would have concluded that the case belonged in federal court and vacated the District Court's order . . . Vodenichar therefore supports rather than undermines the longstanding rule that a case brought after a voluntary dismissal is "an

---

[5] See Chico–Velez v. Roche Prods., Inc., 139 F.3d 56, 59 (1st Cir. 1998) ("dismissal of the original suit, even though labeled as without prejudice, nevertheless may sound the death knell for the plaintiff's underlying cause of action if the sheer passage of time precludes the prosecution of a new action."); Graham v. Johnson, 168 F.3d 762, 777 n.12 (5th Cir. 1999) (the Fifth Circuit "does not consider a suit filed after a dismissal without prejudice a continuation of the first suit."); Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir. 2000) ("a suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed.").

[6] See also U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 489 (8th Cir. 1990) (affirming district court's decision to proceed with the first-filed suit where the second-filed suit was "not a continuation of a legal process already underway," but rather a "completely separate suit filed in a different court.").

entirely new lawsuit unrelated to the earlier (dismissed) action." Id. at 822–23 (internal citations omitted).

While Block's claim was dismissed by the Texas court, as opposed to voluntarily dismissed, the Court finds that Erie's logic applies in equal force to the present facts. Erie concludes that suits filed after a voluntarily dismissal are entirely new lawsuits because a voluntary dismissal under Federal Rule of Civil Procedure 41(a) "leaves the situation as if the action never had been filed." Id. (internal citations omitted). Similarly, the filing of an amended complaint generally renders the original complaint of no legal effect. West Run Student Hous. Assoc., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 171 (3d Cir. 2013) (collecting cases). As the Third Circuit has explicitly held that voluntary dismissals and amended complaints render the original complaint of no legal effect, the Court sees no basis to now find that a complaint dismissed by one court has any significance on a similar complaint filed in a different court. Block's Complaint in this district is not a continuation of the Texas action.

### 2. Substantially Similar

Finding that Barnes's New York Complaint was first-filed, the Court must now determine whether Barnes's New York Complaint and Block's Pennsylvania Complaint are substantially similar as to warrant the application of the first-filed rule. The first-filed rule "gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." E.E.O.C. , 850 F.2d at 971. The Third Circuit has explained that for two cases to be considered substantially similar, "the later-filed case must be 'truly duplicative'" of the first-filed case. Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 333 n.6 (3d Cir. 2007). To be "truly duplicative" of one another, the two cases must be "materially on all fours" with each other such that "a determination in one action leaves little or

nothing to be determined in the other." Id. "When the claims, parties, or requested relief differ, deference may not be appropriate." Complaint of Bankers Tr. Co. v. Chatterjee, 636 F.2d 37, 40 (3d Cir. 1980).

Block's Complaint in this action brings a single defamation claim. Block alleges that Barnes and Barnes's attorney told national media publications that Barnes and Block had agreed to share any proceeds from the Focus Media investigation and that Block relied on information provided by Barnes to secure the SEC whistleblower award. Compl. at ¶¶ 79, 81. Block seeks compensatory damages, punitive damages, a permanent injunction, and attorney's fees. Id. at 24.

Barnes's Complaint in the New York action brings unjust enrichment, constructive trust, and breach of fiduciary duty claims. Barnes v. Block et al., 22-cv-07236 (S.D.N.Y.), ECF 13. All three claims rest on Barnes's main assertion that he and Block formed an oral partnership in which they agreed to share any proceeds resulting from the Focus Media investigation. Id. ¶¶ 45–46. Barnes alleges that Block breached their agreement by undermining Barnes's contributions to the report in his communications with the SEC and refusing to share the $14 million whistleblower award with Barnes as required by their partnership. Id. ¶ 12. Barnes seeks damages in excess of $7 million, half of the award. Id. ¶ 135.

The parties, claims, and requested relief of the two suits differ. First, the parties in the two suits are not identical. Barnes names Block and Muddy Waters, LLC as defendants in the New York action. The only parties to this action are Block and Barnes. Second, the two suits do not address the same issues. Resolution of Barnes's New York claims for unjust enrichment, constructive trust, and breach of fiduciary duty would not resolve Block's defamation claim. A determination in the New York action as to whether Block and Barnes had indeed established an oral partnership to share proceeds may be relevant to the falsity element of Block's defamation

claim. However, a resolution of the New York action would not determine whether Barnes's statements were defamatory, whether Barnes acted with the requisite degree of fault, or the amount of Block's damages, if any. While the two actions involve overlapping underlying conduct, this case has a broader scope than the New York action such that a determination in one action would not resolve the other. Third, the parties seek different relief. Block seeks defamation damages and Barnes seeks half of the SEC whistleblower award.

Due to the above differences between the two actions, they are not "truly duplicative" of one another. Thus, the Court finds that the actions are not substantially similar for purposes of the first-filed rule. As the Court finds that the first-filed rule does not apply, it will now turn to whether transfer is appropriate under 28 U.S.C. § 1404's considerations.[7]

### B. 1404's Considerations

### 1. Private Interest Factors

Factor one, plaintiff's forum preference, weighs against transfer. "[T]he plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879. A plaintiff's choice of forum is typically given less deference than it ordinarily would be "where the operative facts giving rise to the action occurred in another district and the plaintiff chooses a venue of which he is not a resident." Cooper ex rel. Estate of Cooper v. Correct Care Sols., 2019 WL 1227713, at *4 (E.D. Pa. Mar. 15, 2019) (Baylson) (internal citations omitted). Block neither alleges that the operative facts giving rise to his defamation claim occurred in this district nor that he is a resident of this district. However, Block first attempted to bring his defamation claim in the district of his residence, the Western District of Texas. Barnes was found to not be subject to personal

---

[7] The undersigned conferred with Chief Judge Swain of the Southern District of New York, who presides over Barnes's action in that district. The parties consented in advance to this conversation taking place. Chief Judge Swain did not object to this Court denying Barnes's Motion to Transfer and was not of the view that transfer is required under the first-filed rule. There is no such motion pending in the SDNY action.

jurisdiction in that district. Block then filed in this district to ensure that personal jurisdiction would be satisfied as Barnes resides here. Barnes's burden would be lessened if Block chose to litigate away from his "home turf" "absent a legitimate, rational reason." Teleconference Sys. v. Proctor & Gamble Pharms., Inc., 676 F. Supp. 2d 321, 330 (D. Del. 2009). Here, Block had a legitimate, rational reason to file outside of his "home turf" because the Western District of Texas did not have personal jurisdiction over Barnes. Thus, Barnes's burden is not lessened, and Block's choice of forum remains the paramount consideration.

In contrast, factor two, "defendant's forum preference," supports transfer. Barnes seeks to transfer this action to the Southern District of New York. However, a "defendant's preference is not accorded particular weight" and "[t]he controlling question is whether a combination of other factors is sufficient to overcome the presumption that the plaintiff's preference governs." Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP, 2020 WL 1888950, at *6 (E.D. Pa. Apr. 16, 2020) (McHugh).

Factor three, where the claim arose, is neutral. This defamation claim arises out of statements made by Barnes and his lawyer to reporters from the Wall Street Journal and Bloomberg. Compl. at ¶¶ 79, 81. While Barnes alleges that these comments were made from a New York phone number to New York based journalists, Mot. at 10, it is not clear to the Court that this is where the operative facts of the case arose.

Federal law controls where a claim arises for venue purposes. Leroy v. Great W. United Corp., 443 U.S. 173, 183 n.15 (1979). In determining where the claim arose, several courts have adopted the "weight of contacts" or "predominant locus" test. Klauder & Nunno Enter. v. Hereford Assoc., 723 F.Supp. 336, 342 (E.D. Pa. 1989) (Cahn). This test requires the Court to "examine whether a 'significant and substantial' part of the offense occurred in the district; if the contacts

rest more heavily in one jurisdiction than in others, the jurisdiction with the weightiest contacts prevails." Id. at 342 (internal citations omitted).

In determining where the "weightiest contacts prevail," the Court must determine whether a more "significant and substantial part of the offense occurred" in this district or the Southern District of New York.[8]  Although these decisions are highly fact specific, "[i]n defamation cases, . . . courts have repeatedly held that venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district." DaimlerChrysler Corp. v. Askinazi, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000) (Yohn).  In DaimlerChrysler Corp., the allegedly defamatory statements were found to have arisen in this district, even though they were made in Michigan, because "they were published in this district in the form of articles based on the press release, the Wall Street Journal article, and the American [L]awyer article." Id.[9] [10]  Block argues that the allegedly defamatory statements were "published in news outlets with national and international focus and reach." Resp. at 25 n.8, 28.  Although the comments were published in national journals—and therefore can be considered published in this district—the same reasoning applies to their publication in New York.  Further, Block's injury is most aptly described as occurring in Texas, his home state.  Several other key events, spanning both cases, similarly arose neither in this district nor the Southern District of New York.  For example, the

---

[8] Courts often look to where the injury was suffered.  However, the location where the injury was suffered is most aptly described as Texas, where Block is a resident.  However, Texas is not a proper venue for this suit as the Texas Court found that it did not have personal jurisdiction over Barnes.

[9] See also Klauder, 723 F.Supp. at 342 (allegedly defamatory letter could have been written in Pennsylvania, was sent to residents of Pennsylvania and Pennsylvania arbitration board); Davis v. Costa–Gavras, 580 F.Supp. 1082, 1088–90 (S.D.N.Y. 1984) (venue in defamation case placed in district in which defendant researched and wrote libelous material and most publication occurred even though the primary place of injury was elsewhere); Jaffe v. Dolan, 264 F.Supp. 845, 848 (E.D.N.Y .1967) (claim arose where libel was published); Manion v. Lima Mem'l Hosp., 1992 WL 368158 at *2 (E.D. Pa. Dec. 3, 1992) (Kelly) (a defamation claim arises where the statements are published).

[10] Cf Dobrick-Peirce v. Open Options, Inc., 2006 WL 2089960, at *6 (W.D. Pa. Jul. 25, 2006) (concluding that venue was improper in the Western District of Pennsylvania, where the plaintiff failed to allege any facts indicating that the allegedly defamatory statements were published in Pennsylvania); Lomano v. Black, 285 F.Supp.2d 637, 642 (E.D. Pa. 2003) (Kelly) (holding that venue was improper in the Eastern District of Pennsylvania, where no party asserted that the allegedly defamatory statements were published in Pennsylvania).

Focus Media investigation occurred in Thailand and the Focus Media Report was prepared and published in California.  Id.  As such, neither district has "weightier contacts" to Block's defamation claim, rendering this factor neutral.

Factor four, the convenience of the forum for the parties, weighs against transfer.  As a Pennsylvania citizen, this district is a convenient forum for Barnes to litigate.  It is likewise a convenient forum for Block, whose preference it is to litigate here.

Factors five and six, the convenience of the witnesses and the ease with which the parties will be able to access sources of proof, are largely neutral.  The most likely non-party witnesses, the Wall Street Journal and Bloomberg reporters, live in New York and Virginia, respectively. That one lives in New York marginally weighs towards transfer.  However, there is no indication that any non-party witnesses would be unavailable for trial in this district.  Block contends that the relevant documents are stored in servers or in the cloud.  Resp. at 27.  "[G]iven the availability of modern technology, the possible location of records [elsewhere] is of limited significance." Markham v. Ethicon, Inc., 2020 WL 1158546, at *2 (E.D. Pa. Mar. 6, 2020) (Baylson) (quoting Leone v. Cataldo, 574 F.Supp.2d 471, 486 (E.D. Pa. 2008) (Brody)).

On balance, the private interest factors weigh against transfer because Plaintiff's choice of forum is paramount, and the remaining factors do not overcome this assumption.

### 2.  Public Interest Factors

Factor one, the enforceability of the judgment, is neutral.  Like any judgment, the damages and injunction that Block seeks "can be enforced regardless of which district is the trial forum." Cont'l Cas. Co. v. Thermoplastic Processes A TPI Partners Corp., 2019 WL 6715473 at *2 (E.D. Pa. Dec. 9, 2019) (Bartle).

Factor two, the practical considerations of making the trial easy, expeditious, or inexpensive. As discussed, the possibility of remote access to proof and witnesses makes the cost of producing documents and witness testimony of limited significance. To the extent that this action and the New York action are based on overlapping underlying conduct, discovery can be coordinated to avoid duplicative cost and effort.

Factor three, court congestion, is not an issue.

Factors four and five, the local interest in deciding controversies at home and public policies of the fora, are neutral. Neither Block nor Barnes make an argument as to whether these factors weigh in favor or against transfer.

Finally, factor six, the familiarity of the trial judge with applicable state law in diversity cases, is neutral. To the extent that Texas law applies, as Block contends, neither the undersigned nor a judge sitting in the Southern District of New York have a heightened familiarity. To the extent that the New York Anti-SLAPP statute applies, as Barnes contends, the undersigned has previously applied the statute and is familiar with its content. See Woods Servs., Inc. v. Disability Advocs., Inc., 342 F.Supp.3d 592, 608 (E.D. Pa. 2018) (Baylson).

Overall, the public interest factors are largely neutral. As such, the balance of the Jumara factors favor the exercise of jurisdiction as "plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879.

## VI.    CONCLUSION

Finding that the first-filed rule does not apply and that 28 U.S.C. § 1404(a)'s considerations weigh against transfer, this Court denied Barnes's Motion.

BY THE COURT:

MICHAEL M. BAYLSON, U.S.D.J.

\\adu.dcn\pacd\phl-data\judge_baylson\civil 23\23-2483 block v. barnes\23-2483 memo re def.'s motion to transfer.docx